IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| JANET MALDET, administratrix of the Estate of Jason Thomas Maldet, deceased, | ) ) ) | Case No. 2:19-cv-325 |
|---|---|---|
| Plaintiff, | ) ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) | |
| JOHNSTOWN POLICE DEPARTMENT, CITY OF JOHNSTOWN, SARGENT ERIN KABLER, | ) ) ) ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Before the Court is Defendants' Motion to Dismiss for Failure to State a Claim. (ECF No. 3.) This Motion is fully briefed (*see* ECF No. 4, 6) and is ripe for disposition. For the reasons that follow, Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

I. **Background**

Plaintiff Janet Maldet, acting as the administratrix of the Estate of Jason Thomas Maldet, filed a Praecipe for Writ of Summons against Defendants Johnstown Police Department, the City of Johnstown ("the City"), and Sargent Erin Kabler (collectively "Defendants") in the Allegheny Court of Common Pleas on November 5, 2018. (*See* ECF No. 1 ¶ 1.) Plaintiff filed a Complaint against Defendants on February 25, 2019. (*Id.* ¶¶ 2- 4.) On March 25, 2019, Defendants filed a Notice of Removal to this Court. (*See id.*)

On April 1, 2019, Defendants filed a Motion to Dismiss for Failure to State a Claim. (ECF No. 3.) To rule on that Motion, the Court will accept the following facts, which appear in Plaintiff's Complaint (ECF No. 1-3), as true.

This case arises from the events after Mr. Maldet was taken into custody by the Conemaugh Township Police Department on November 7, 2016. (*Id.* ¶ 6.) While in Conemaugh Township Police custody, Mr. Maldet suffered a medical emergency and was transported to Conemaugh Hospital in Johnstown, Pennsylvania. (*Id.* ¶¶ 6-7.)

Mr. Maldet checked himself out of Conemaugh Hospital and left its grounds on foot. (*Id.* ¶ 7.) Sometime after Mr. Maldet checked out of the hospital, Johnstown Police Sargent Erin Kabler saw an individual matching Mr. Maldet's description walking down the street. (*Id.* ¶ 8.) Sargent Kabler claimed that Mr. Maldet "was impaired with unsteady gait, disheveled clothing, and uncoordinated hand movements." (*Id.*)

Mr. Maldet stepped over a guardrail near a river embankment. (*Id.* ¶ 9.) There was a twenty-four-foot drop between where Mr. Maldet stood and the edge of the river below. (*Id.*) Sargent Kabler deployed his taser and hit Mr. Maldet in the back. (*Id.*) Mr. Maldet fell to the ground and eventually over the embankment. (*Id.*) Mr. Maldet died from his injuries.

Plaintiff's Complaint contains twenty-four counts. Plaintiff brings Counts I, III, V, VII, IX, XI, XIII, XV, XVII, XIX, XXI, and XXIII through Pennsylvania's Wrongful Death Act. (*Id.* at 4-25.) Plaintiff's Wrongful-Death-Act claims are based on negligence (*id.* ¶¶ 11-15), false imprisonment (*id.* ¶¶ 19-20), assault and battery (*id.* ¶¶ 22-23), and federal civil rights violations (*id.* ¶¶ 25-27). Plaintiff brings Counts II, IV, VI, VIII, X, XII, XIV,

XVI, XVIII, XX, XXII, and XXIV through Pennsylvania's Survival Act. Those claims are based on the same legal theories—false imprisonment, assault and battery, and federal civil rights violations.

## II. Jurisdiction

The Court has jurisdiction over Plaintiff's federal-law claims pursuant to 28 U.S.C. § 1331 and § 1343 because she brings claims under 42 U.S.C. § 1983. The Court has supplemental jurisdiction over Plaintiff's state-law claims under 28 U.S.C. § 1367. Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the events giving rise to the claims occurred in the Western District of Pennsylvania.

## III. Standard of Review

A complaint may be dismissed under Federal Rule of Civil Rule 12(b)(6) for "failure to state a claim upon which relief can be granted." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016). But detailed pleading is not generally required. *Id.* The Rules demand only "a short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting FED. R. CIV. P. 8(a)(2)).

Under the pleading regime established by *Twombly* and *Iqbal*, a court reviewing the sufficiency of a complaint must take three steps.[1] First, the court must "tak[e] note of

---

[1] Although *Iqbal* described the process as a "two-pronged approach," *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009), the Supreme Court noted the elements of the pertinent claim before proceeding with that approach, *id.* at 675–79. Thus, the Third Circuit has described the process as a three-step approach. *See Connelly*, 809 F.3d at 787; *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 n.4 (3d Cir. 2011) (citing *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (2010)).

the elements [the] plaintiff must plead to state a claim." *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009). Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* at 679; *see also Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 224 (3d Cir. 2011) ("Mere restatements of the elements of a claim are not entitled to the assumption of truth.") (citation omitted). Finally, "[w]hen there are well-pleaded factual allegations, [the] court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Connelly*, 809 F.3d at 786. Ultimately, the plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

IV. **Discussion**

    A.    **The Court Will Dismiss Plaintiff's § 1983 Claims Against the Johnstown Police Department (Counts VII-VIII) Because They are Duplicative of Plaintiff's § 1983 Claims Against the City of Johnstown and Sargent Kabler**

In their Motion to Dismiss, Defendants argue that the Court must dismiss Plaintiff's claims against the Johnstown Police Department because it is an improper defendant. (ECF No. 4 at 17-18.) Specifically, Defendants argue that a municipal police department—like the Johnstown Police Department—is not subject to suit because it is merely an administrative arm of the municipality itself. (*Id.*) The Court agrees.

-4-

The Third Circuit has held that "police departments cannot be sued alongside municipalities [in § 1983 actions] because a police department is merely an administrative arm of the municipality itself." *Hernandez v. Borough of Palisades Park Police Dep't*, 58 F. App'x 909, 912 (3d Cir. 2003) (citing *Bonenberger v. Plymouth Twp.*, 132 F.3d 20, 25 n.4 (3d Cir. 1997); *Colburn v. Upper Darby Twp.*, 838 F.2d 663, 671 n.7 (3d Cir. 1988)); *see also Burkhart v. Knepper*, 310 F. Supp. 2d 734, 738 (W.D. Pa. 2004) (Gibson, J.) (dismissing § 1983 claim against police department because it was duplicative of § 1983 claim against city government).

Here, Plaintiff brings claims for civil-rights violations against both the Johnstown Police Department and the City of Johnstown. Accordingly, the § 1983 claims against the Johnstown Police Department are redundant of the § 1983 claims against the City of Johnstown. Accordingly, the Court will dismiss Counts VII and VIII—Plaintiff's § 1983 claims against the Johnstown Police Department.

### B. The Court Will Dismiss Plaintiff's Negligence Claims (Counts I, II, IX, X, XVII, and XVIII) Because Defendants Are Immune to Suit Under Pennsylvania's Political Subdivision Tort Claims Act

The Pennsylvania Political Subdivision Tort Claims Act (PSTCA) provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 PA. CONS. STAT. § 8541. Both cities and police departments are "local agencies" for PSTCA purposes. *See, e.g., Burkhart*, 310 F. Supp. 2d at 744 (holding that both the City of Johnstown and Johnstown Police Department were "local agencies" under the PSTCA). "Tort immunity is a non-waivable, absolute defense." *Cromo v. SSC*

-5-

*Coraopolis Operating Co., LP*, No. 17-1625, 2018 WL 4403522, at *4 (W.D. Pa. Apr. 17, 2018) (citing *In re Upset Sale of Prop's.*, 560 A.2d 1388, 1389 (Pa. 1989)).

To defeat PSTCA immunity, a plaintiff must show: (1) that damages would be recoverable under common law or a statute if the injury were caused by a person without immunity; (2) that the injury was caused by the negligent act of a government employee in the scope of his duties; and (3) that one of the statutory exceptions to PSTCA immunity applies. 42 PA. CONS. STAT. § 8542; *Thompson v. Wagner*, 631 F. Supp. 2d 664, 687-88 (W.D. Pa. 2008) (Gibson, J.).

There are eight categories of "negligent acts" for which a local agency can be held liable. The categories are: (1) vehicle liability; (2) care, custody, or control of personal property; (3) real property; (4) trees, traffic controls, and street lighting; (5) utility service facilities; (6) streets; (7) sidewalks; and (8) care, custody, or control of animals. 42 PA. CONS. STAT. § 8542(b); *Thompson v. Wagner*, 631 F. Supp. 2d 664, 668 (W.D. Pa. 2008) (Gibson, J.).

The negligent acts alleged in Plaintiff's Complaint do not fall within any of the categories of exceptions to the PSTCA. In sixteen paragraphs, Plaintiff details Defendants' alleged negligence. (ECF No. 1-3 ¶ 15.) Plaintiff's negligence allegations center around Defendants negligently injuring Mr. Maldet by unnecessarily deploying a taser. (*Id.*) None of these allegations relate to the eight categories of exceptions to PSTCA immunity.

Therefore, the Court finds that the PSTCA immunizes Defendants against Plaintiff's negligence claims. As the Court noted, both the City of Johnstown and the Johnstown Police Department are "local agencies." 42 PA. CONS. STAT. § 8541; *Burkhart,*

310 F. Supp. 2d at 744 (holding that both a city and its police department were "local agencies" under the PSTCA).

The PSTCA also applies to Sargent Kabler. The PSTCA provides that:

> [a]n employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties only to the same extent as his employing local agency and subject to the limitations imposed by this subchapter.

42 PA. CONS. STAT. § 8545. Here, Plaintiff alleges "[t]hat at all times relevant to this action Defendant Sargent Erin Kabler was employed as a Police Officer with the Johnstown Police Department and acting within the scope of said employment." (ECF No. 1-3 ¶ 5.) Accordingly, Sargent Kabler is entitled to immunity because he was acting within the scope of his employment for the Johnstown Police Department, which is also entitled to immunity. The Court will therefore dismiss Counts I, II, IX, X, XVII, and XVIII.

C. **The Court Will Dismiss Plaintiff's Intentional Tort Claims Against the City of Johnstown and Johnstown Police Department (Counts III, IV, V, VI, XI, XII, XIII, XIV) Because They Are Immune to Suit Under the PSTCA**

In their Motion to Dismiss, Defendants argue that the PSTCA immunizes the City of Johnstown and Johnstown Police Department from Plaintiff's intentional-tort claims. (ECF No. 4 at 9-10.) The PSTCA provides that:

> [i]n any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of sections 8545 (relating to official liability generally), 8546 (relating to defense of official immunity), 8548 (relating to indemnity) and 8549 (relating to limitation on damages) shall not apply.

42 PA. CONS. STAT. § 8550. Courts have held that "willful misconduct in [the PSTCA] context has the same meaning as the term 'intentional tort.'" *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001); *Beard v. Borough of Duncansville*, 652 F. Supp. 2d 611, 628 (W.D. Pa. 2009) (Gibson, J.).

Despite the exception to immunity for a local employee's willful misconduct, courts have held that municipalities are immune from the intentional torts of their employees. *Beard*, 652 F. Supp. 2d at 628 (citing *Talley v. Trautman*, 1997 WL 135705, at *5-*6 (E.D. Pa. 1997); *Agresta v. City of Phila.*, 694 F. Supp. 117, 123-24 (E.D. Pa. 1998)). "[T]his exception [for willful misconduct] applies only to claims against individual employees of the agency and not the agency itself." *Randall v. City of Phila.*, No. 13-3864, 2014 WL 4105984, at *9 (E.D. Pa. Aug. 20, 2014); *Max v. City of Phila.*, 102 F. Supp. 2d 609, 610-11 (E.D. Pa. 2000) ("While an individual employee may not claim immunity for intentional torts, *see id.* § 8550, the City's immunity remains intact even when such allegations are made."). Accordingly, the Court finds that the City of Johnstown and Johnstown Police Department are immune to Plaintiff's intentional-tort claims against it, and will therefore dismiss Counts III, IV, V, VI, XI, XII, XIII, XIV.

### D. The Court Will Not Dismiss Plaintiff's Intentional-Tort Claims Against Sargent Kabler (Counts XIX, XX, XXI, and XXII)

As previously discussed, the PSTCA does not immunize Sargent Kabler against Plaintiff's intentional-tort claims. *See* 42 PA. CONS. STAT. § 8550. Defendants do not seek

dismissal of Plaintiff's intentional-tort claims against Sargent Kabler. Accordingly, the Court will not dismiss these claims or conduct a Rule 12(b)(6) analysis.[2]

### E. The Court Will Not Dismiss Plaintiff's Claims for Federal Civil Rights Violations Against the City of Johnstown and Sargent Kabler (Counts XV, XVI, XXIII, XXIV)

Plaintiff brings claims for civil rights violations in Counts VII, VIII, XV, XVI, XXIII, and XXIV of her Complaint.[3] (*See* ECF No. 1-3 at 11-13.) Plaintiff alleges that Defendants violated the Fourth and Fourteenth Amendments by using unreasonable and excessive force, failing to train and monitor officers, and failing to implement policies on taser use. (*See, e.g., id.* ¶¶ 27-29.) Each of those claims begins with the heading "UNDER THE WRONGFUL DEATH ACT" (*see, e.g. id.* at 11) or "UNDER THE SURVIVAL ACT" (*see, e.g. id.* at 13.)—meaning that Plaintiff brings the claims through Pennsylvania's wrongful death and survival statutes. 42 PA. CONS. STAT. §§ 8301, 8302. These claims also state that Plaintiff seeks damages for constitutional violations under § 1983. (ECF No. 1-3 at ¶¶ 29, 41.)

In their Motion to Dismiss, Defendants argue that the Court must dismiss Plaintiff's civil-rights claims because "[w]rongful death and survival claims are state law claims to which the PSTCA applies, even where, as here the underlying wrongful conduct alleged in support of the claims is premised upon violations of federal rights or laws." (ECF No. 4 at 12.)

---

[2] The Court notes that its jurisdiction over these claims is based upon supplemental jurisdiction. *See* 28 U.S.C. § 1367. Accordingly, the Court will only exercise jurisdiction over Plaintiff's state-law intentional tort claims to the extent that it exercises jurisdiction over Plaintiff's federal civil rights claims.

[3] In a preceding subsection, the Court dismissed Counts VII and VIII of the Complaint because the Johnstown Police Department was not a proper defendant.

-9-

The Court will not dismiss Plaintiff's civil rights claims on immunity grounds at this stage in the litigation. As a preliminary matter, it is well-established that an estate may bring § 1983 claims, as those claims "do[] not die with the victim of the alleged constitutional wrong." *Moyer v. Berks Heim Nursing Home*, No. 13-cv-4497, 2014 WL 1096043, at *2 (E.D. Mar. 20, 2014) (quoting *Baffa v. Black*, 481 F. Supp. 1083, 1085-86 (E.D. Pa. 1979)); *Robertson v. Wegmann*, 436 U.S. 584, 592-93 (1978); *Moor v. Cty. of Alameda*, 411 U.S. 693, 703 (1973).

§ 1988 provides that:

> The jurisdiction in civil and criminal matters conferred . . . for the protection of all persons in the United States in their civil rights, and for their vindication, shall be exercised and enforced in conformity with the laws of the United States, so far as such laws are suitable to carry the same into effect; but in all cases where they are not adapted to the object, or are deficient in the provisions necessary to furnish suitable remedies and punish offenses against law, the common law, as modified and changed by the constitution and statutes of the State wherein the court having jurisdiction of such civil or criminal cause is held, so far as the same is not inconsistent with the Constitution and laws of the United States, shall be extended to and govern the said courts in the trial and disposition of the cause.

Accordingly, under § 1988, "state statutory law . . . provide[s] the principal reference point in determining survival of civil rights actions." *Robertson*, 436 U.S. at 589; *Giles v. Campbell*, 698 F.3d 153, 156 (3d Cir. 2012).

Therefore, Plaintiff's remedy in this case is through Pennsylvania's wrongful death and survival statutes. Under Pennsylvania law, "wrongful death and survival actions are not substantive causes of action; rather, they provide a vehicle through which plaintiffs can recover for unlawful conduct that results in death." 42 PA. CONS. STAT. §§ 8301, 8302;

*see also Johnson v. City of Philadelphia*, 105 F. Supp. 3d 474, 483 (E.D. Pa. 2015) (citing *Sullivan v. Warminster Twp.*, 765 F. Supp. 2d 687, 707 (E.D. Pa. 2011); *Carroll v. Skloff*, 202 A.2d 9, 10-11 (Pa. 1964)). Plaintiffs asserting these claims must assert some other independent, cognizable claim to survive a motion to dismiss wrongful death and survival claims. *See Salvio v. Amgen, Inc.*, 810 F. Supp. 2d 745, 757 (W.D. Pa. 2011) (dismissing wrongful death and survival claims because they "cannot be brought . . . as claims in-and-of themselves, because an underlying claim, such as negligence, is needed for these claims to be cognizant . . ."); *Palakovic v. Wetzel*, No. 3:14-cv-145, 2015 WL 3937499, at *12 (W.D. Pa. June 26, 2015), *rev'd on other grounds*, 854 F.3d 209 (3d Cir. 2017). Wrongful death and survival actions have often been brought alongside § 1983 claims. § 1983 is thus recognized as a sufficient underlying basis for wrongful death and survival claims under Pennsylvania law. *See, e.g., Estate of Kempf v. Washington Cty.*, No. 15-cv-1125, 2018 WL 4354547 (W.D. Pa. Sept. 12, 2018).

Neither the Supreme Court or the Third Circuit has squarely addressed whether state law immunities apply to § 1983 claims brought by a decedent's estate through state law survival or wrongful-death statutes.

The Third Circuit held that the "governmental immunity statute [PSTCA], although effective against a state tort claim, has no force when applied to suits under the Civil Rights Act." *Wade v. City of Pittsburgh*, 765 F.2d 405, 407-08 (3rd Cir. 1985). "The supremacy clause of the Constitution prevents a state from immunizing entities or individuals alleged to have violated federal law. This result follows whether the suit to

redress federal rights is brought in state or federal court." *Id.* at 408 (citing *Martinez v. Cal.*, 444 U.S. 277, 284 (1980); *Mancini v. Lester*, 630 F.2d 990, 994 (3d Cir. 1980)).

Nonetheless, district courts within the Third Circuit have reached inconsistent results when applying the PSTCA to § 1983 claims brought under Pennsylvania's survival and wrongful-death statutes. *Compare Burkhart*, 310 F. Supp. 2d at 744 (dismissing § 1983 claim brought through wrongful death and survival statutes because plaintiff did not allege intentional conduct, and was therefore unable to defeat PSTCA immunity) *with DeJesus v. City of Lancaster*, 2015 WL 1230319, at *3 (E.D. Pa. Mar. 17, 2015) (allowing § 1983 claim brought under wrongful death and survival statutes to proceed despite defendants' arguments that they were immune under the PSTCA).

The Court is not persuaded by the reasoning in cases that have applied the PSTCA to bar § 1983 claims brought through Pennsylvania's wrongful death and survival statutes. *See Burkhart*, 310 F. Supp. 2d at 744; *Momot v. City of Phila.*, No. 11-cv-7806, 2012 WL 1758630, at * (E.D. Pa. May 16, 2012) (holding that PSTCA bars plaintiff's § 1983 claims brought under wrongful death and survival suits because "[c]ourts have uniformly treated wrongful death claims in the context of civil-rights cases as state-law claims"); *Bennett ex rel. Irvine v. City of Phila.*, 2006 WL 1371189, at *13 (E.D. Pa. May 17, 2006). These cases do not thoroughly grapple with the Third Circuit's holding in *Wade*—that the PSTCA does not apply to claims for civil-rights violations.[4] They do not discuss § 1988 or

---

[4] For instance, in *Bennett*, the Court mentions *Wade* in passing, but nonetheless applied the PSTCA and held that defendants were immune from suit. *Bennett*, 2006 WL 1371189, at *13 (citing *Wade*, 765 F.2d at 407) (incorrectly classifying *Wade* as a case where PSTCA did not apply because the plaintiff alleged intentional conduct). In *Momot*, the Court relied on *Sparks v. Hershey*, a Third Circuit opinion where the Court found that the PSTCA immunized a defendant from wrongful

-12-

the general purposes of § 1983.[5] And finally, these cases do not thoroughly address that both § 1983 and the Pennsylvania wrongful death and survival statutes are vehicles to bring claims for redress, and not substantive claims in and of themselves.[6] The Court recognizes that the crux of Plaintiff's claims is the violation of Mr. Maldet's federal civil rights. His claims are federal civil rights claims even though they are brought through Pennsylvania's wrongful death and survival statutes, which weighs against applying the PSTCA.

---

death and survival actions. *Momot*, 2012 WL 1758630, at *4) (citing *Sparks v. Hershey*, 661 F.2d 30, 33 (3d Cir. 1981)). Crucially, *Sparks* dealt with supplemental jurisdiction. *Id.* The Court there did not apply the PSTCA. *Id.* Moreover, *Sparks* involved three claims—a § 1983 action and separate wrongful death and survival actions—and the state-law claims did not involve federal civil rights violations. *Id.* at 32. In *Estate of Rhoad v. East Vincent Twp.*, the court mentions the general rule in *Wade* but did not analyze how it applied to plaintiff's wrongful-death claim. *Estate of Rhoad v. East Vincent Twp.*, No. 05-5875, 2006 WL 1071573, at *10 (E.D. Pa. Apr. 18, 2006). The court allowed plaintiff's § 1983 claims to proceed under different theories, and did not discuss the § 1983 element of plaintiff's wrongful-death claim before dismissing it on PSCTA immunity grounds. *Id.* Finally, in *Burkhart*, the Court cited *Wade* for "the well-established rule that governmental immunity [under the PSTCA] is only applicable to state law claims and not federal civil rights actions," but did not distinguish *Wade* when it ruled that the PSTCA barred plaintiff's § 1983 claims brought through the wrongful death and survival act. 310 F. Supp. 2d at 743-44.

[5] *Rhoad*, *Momet*, and *Bennett* do not mention nor analyze the policies behind § 1983 and § 1988. 2006 WL 1071573, at *10; 2012 WL 1758630 at *4-*5; 2006 WL 1371189, at *13. Similarly, in *Burkhart*, this Court focused on the language of the PSTCA when it determined that defendants were immune from plaintiff's wrongful death and survival claims based on violations of federal civil rights. 310 F. Supp. 2d at 742-44. The Court did not discuss § 1988 or the purposes of § 1983. *Id.* Accordingly, the Court finds that these cases did not fully address the underlying purposes of § 1983 or § 1988. *See Hernandez v. Kalinowski*, 146 F.3d 196, 198-99 (3d Cir. 1998) ("The purpose of [§ 1988] is to ensure effective access to the judicial process for persons with civil rights claims, and to encourage litigation to enforce the provisions of the civil rights acts and constitutional civil rights provisions."); *Collins v. Chandler Unified Sch. Dist.*, 644 F.2d 759, 763-64 (9th Cir. 1981) ("[§ 1988] is broad and unequivocal and must be liberally construed to achieve congressional purposes of encouraging compliance with and enforcement of civil rights laws.").

[6] Neither *Rhoad*, *Momet*, *Burkhart*, or *Bennett* discuss that § 1983 and Pennsylvania's wrongful death and survival statutes are not substantive claims in themselves, but rather are vehicles through which plaintiffs can redress violations of the law. 2006 WL 1071573, at *10; 2012 WL 1758630 at *4-*5; 2006 WL 1371189, at *13; 310 F. Supp. 2d at 742-43. Rather, without analysis, these cases conclude that § 1983 claims are state-law claims when brought under the wrongful death or survival statutes. *Id.*

In other cases, courts have refused to apply the PSTCA to § 1983 claims at the motion-to-dismiss stage and have allowed those claims to proceed into discovery.[7] *See, e.g., Summers v. City of Phila.*, 2017 WL 2734277, at *11 (E.D. Pa. June 26, 2017) ("[S]everal courts in this circuit have permitted [wrongful death and survival] claims to proceed to discovery when based on a § 1983 claim."). In the absence of a clear statement of the law from the Third Circuit or Supreme Court, the Court finds that this approach is appropriate at the motion-to-dismiss stage.

Moreover, the Court finds that applying the PSTCA to bar § 1983 claims brought through Pennsylvania's wrongful death and survival statutes would be contrary to the aims of the Civil Rights Act. If the Court were to hold that the PSTCA barred Mr. Maldet's Estate from bringing § 1983 claims through the wrongful death and survival statutes, then Mr. Madlet's civil rights could never be vindicated. This seems to be an improper result, given that Mr. Maldet himself—had he survived—could have brought § 1983 claims in his own right. The purpose of § 1983—to redress civil rights violations— is frustrated if vindication of an individual's federal civil rights depends on that individual surviving the alleged violation. *See Mitchum v. Foster*, 407 U.S. 225, 238-39 (1972) ("The very purpose of § 1983 was to interpose the federal courts between the States

---

[7] *Moyer v. Berks Heim Nursing Home*, No. 13-cv-4497, 2014 WL 1096043, at *4 (E.D. Pa. Mar. 20, 2014) (holding that "[a]t this early stage in the litigation, I will not dismiss the § 1983 wrongful death claim" and that "the parties will commence discovery on the § 1983 survival claim"); *DeJesus v. City of Lancaster*, No. 14-cv-2377, 2015 WL 1230319, at *3 (E.D. Pa. Mar. 17, 2015) ("I shall take the same approach as the Honorable Lawrence F. Stengel did in *Moyer* and I will allow these [§ 1983 claims brought through Pennsylvania's wrongful death and survival statutes] to proceed. After discovery, the parties may address the propriety of these claims."); *Becker v. Carbon Cty.*, 177 F. Supp. 3d 841 (M.D. Pa. 2016) (citing *DeJesus*, 2015 WL 1230319, at *3) ("At this early stage of the proceedings, without guidance from the Third Circuit, I cannot say, as a matter of law, that Plaintiff is not entitled to pursue a [§ 1983] claim under Pennsylvania's wrongful death statute.").

and the people, as guardians of the people's federal rights."). The Court finds the Fifth Circuit's reasoning on this point to be insightful:

> the utilization of local death and survival statutes does not do more than create an effective remedy. This is so because the right is surely a federally protected one–the right to be free from deprivation of constitutional rights. The local death or survival statute adopted by reference in this fashion does not add to that substantive right. It merely assures that there will be a "remedy"–a way by which that right will be vindicated – if there is a violation of it.

*Brazier v. Cherry*, 293 F.2d 401, 405 (5th Cir. 1961).

Therefore, the Court finds that PSTCA immunity does not bar Plaintiff's civil-rights claims against the City of Johnstown and Sargent Kabler (Counts XV, XVI, XXIII, XXIV). Accordingly, the Court will not dismiss those claims.

## V. Conclusion

For the foregoing reasons, Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 4) is **GRANTED IN PART** and **DENIED IN PART**. The Court will dismiss Counts I-XIV, XVII, and XVIII. Defendants' Motion is denied with respect to Counts XV, XVI, XIX, XX, XXI, XXII, XXIII, and XXIV.

A corresponding order follows.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JANET MALDET, administratrix of the Estate of Jason Thomas Maldet, deceased, | ) ) ) | Case No. 2:19-cv-325 |
| Plaintiff, | ) ) ) | JUDGE KIM R. GIBSON |
| v. | ) ) ) | |
| JOHNSTOWN POLICE DEPARTMENT, CITY OF JOHNSTOWN, SARGENT ERIN KABLER, | ) ) ) ) ) | |
| Defendants. | ) | |

## ORDER

AND NOW, this 11th day of June, 2019, upon consideration of Defendants' Motion to Dismiss for Failure to State a Claim (ECF No. 3) and for the reasons stated in the Court's Memorandum Opinion, **IT IS HEREBY ORDERED** that the Motion is **GRANTED IN PART** and **DENIED IN PART**. Defendants' Motion is granted with respect to Counts I-XIV, XVII, and XVIII. Defendants' Motion is denied with respect to Counts XV, XVI, XIX, XX, XXI, XXII, XXIII, and XXIV.

BY THE COURT:

KIM R. GIBSON
UNITED STATES DISTRICT JUDGE